# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| In Re:<br><br>ANDREW SANTILLANES<br>and NICOLE SANTILLANES,<br><br>**Debtors.** | **Bankruptcy Case<br>No. 05-41250** |
|---|---|

## MEMORANDUM OF DECISION

**Appearances:**

      Bradley E. Rice, Twin Falls, Idaho, Attorney for Debtors.

      R. Sam Hopkins, Pocatello, Idaho, Chapter 7 Trustee.

## Background

The Chapter 7 Trustee R. Sam Hopkins objects to Debtors' Andrew and Nicole Santillanes' claim of exemption under Idaho Code § 11-207 in Mr. Santillanes's share savings account at his credit union. Docket Nos. 11, 12. The Court conducted an evidentiary hearing concerning Trustee's objection on October 31, 2005, and thereafter took the matter under advisement. After considering the arguments, evidence and relevant case law, the Court concludes

MEMORANDUM OF DECISION - 1

that Debtors may exempt the money in the account. This Memorandum constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052; 9014.

## Facts

Mr. Santillanes is employed by Simplot. On August 26, 1997, he opened a "share savings account" with the Pocatello Simplot Credit Union and began depositing funds into the account via payroll deductions. Exs. 2, 6, 9. Mr. Santillanes applied for his first loan from the Credit Union in September 1998. Ex. 6. At the time he applied for this loan, Mr. Santillanes's account had a balance of $144.86, which he testified came from his wages during the pay period at the time. As a condition of the loan, the Credit Union required Mr. Santillanes to increase his share account to a balance of $1,000 through continued payroll deductions. Ex. 6. In 2000 and 2001, Mr. Santillanes borrowed additional sums from the Credit Union to purchase two cars. These loans were secured by the cars and by share pledge agreements. Under the terms of these loans, the Credit Union required Mr. Santillanes to build his savings account to $7,500. Exs. 4, 6, 9. In addition to a contribution from each of his paychecks, he was required to deposit the entire amount of one paycheck for the two months each year he received three biweekly paychecks. Exs. 4, 9.

MEMORANDUM OF DECISION - 2

Since opening the account, Mr. Santillanes has continued to contribute money from payroll deductions and currently has $7,500 in the account. As noted above, the amounts on deposit serve as collateral for the Credit Union's loans. Under his agreement with the Credit Union, Mr. Santillanes can not withdraw the money in his share savings account until his loans are paid in full. Ex. 6. Mr. Santillanes owes about $17,300 on the loans. Mr. Santillanes has never made any deposits to his savings account other than from payroll deductions and has not made additional contributions once reaching the required balance. *See* Exs. 2, 6, 9.

**Disposition**

**A.     Arguments.**

Trustee advances three arguments to support his objection to Debtors' claim of exemption. First, he contends that Debtors have not shown that the amounts on deposit in the share account are traceable to Mr. Santillanes's wages. Second, because the share account proceeds are pledged as collateral for loans extended by the Credit Union, Trustee argues the character of those funds has changed from earnings to an investment, so the exemption statute is inapplicable. Third, Trustee points out that the purpose of Idaho Code § 11-207 is to protect a portion of a debtor's current earnings, not accumulated savings.

MEMORANDUM OF DECISION - 3

Trustee insists that purpose will be frustrated if the exemption is allowed in this case.

Debtors disagree with these arguments. They contend the account deposits are all directly traceable to Mr. Santillanes's wages, and therefore, under this Court's decision in *In re Colling*, 03.1 I.B.C.R. 58 (Bankr. D. Idaho 2003), 75% of the funds are exempt.

**B.    Exemption Standards**.

In Idaho, citizens are restricted to the exemptions allowed under state law. 11 U.S.C. § 522(b)(1); Idaho Code § 11-609. As the objecting party, Trustee bears the burden of proof to show the exemption is not proper. Fed. R. Bankr. P. 4003(c). However, once Trustee presents "sufficient evidence to rebut the prima facie validity of the exemption, the burden shifts to a debtor to demonstrate that the exemption is proper." *In re Nielsen*, 97.4 I.B.C.R. 107, 107 (Bankr. D. Idaho 1997). It is well established that "the nature and extent of exemptions is determined as of the date that the bankruptcy petition is filed," *In re Moore*, 269 B.R. 864, 868 (Bankr. D. Idaho 2001), and that exemption statutes are liberally construed in favor of the debtor, *In re Steinmetz*, 01.1 I.B.C.R. 28, 28 (Bankr. D. Idaho 2001).

Idaho Code § 11-207 provides:

MEMORANDUM OF DECISION - 4

> (1) Except as provided in subsection (2) of this section, the maximum amount of the aggregate disposable earnings of an individual for any work week which is subjected to garnishment shall not exceed (a) twenty-five per cent (25%) of his disposable earnings for that week, or (b) the amount by which his disposable earnings for that week exceed thirty (30) times the federal minimum hourly wage prescribed by 29 U.S.C.A. 206(a)(1) in effect at the time the earnings are payable, whichever is less. In the case of earnings for any pay period other than a week, the Idaho commissioner of labor shall by regulation prescribe a multiple of the federal minimum hourly wage equivalent in effect to that set forth in (b) of this subsection.

The relevant statutory definitions are follows:

> For the purpose of section 11-207, Idaho Code, the term:
>
> 1. "Earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.
>
> 2. "Disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.
>
> 3. "Garnishment" means any legal or equitable procedure through which the earnings of any individual are required to be withheld for payment of any debt.

Idaho Code § 11-206.

MEMORANDUM OF DECISION - 5

## C. Under *Colling,* the Exemption Applies.

In *In re Colling*, 03.1 I.B.C.R. 48 (Bankr. D. Idaho 2003), this Court held that the debtor could claim 75% of the money on deposit in her checking account exempt under Idaho Code § 11-207 because those funds were directly traceable to the debtor's wages paid and deposited into her checking account on the day she filed bankruptcy. In *Colling*, the Court relied not only upon its own prior decisions, but also that of the Idaho Court of Appeals in *Hooper v. State*, 908 P.2d 1252, 1257–58 (Idaho Ct. App. 1995). There, the state court, interpreting Idaho Code § 11-207, applied tracing principles to a prison inmate's account to determine if the money in the account could be exempted under Idaho Code § 11-207. The court in *Hooper* denied the exemption because the inmate could not demonstrate that all of the funds in the account were indeed directly traceable to his personal earnings. *Hooper*, 908 P.2d at 1258.

Here, Trustee has not presented evidence to rebut the validity of the exemption. Mr. Santillanes's testimony and the other evidence in the form of letters from the Credit Union show without contradiction that all of the deposits to the share savings account came directly from Debtor's wages, having been withheld by his employer from his paychecks. While Trustee may have preferred additional proof in the form of wage statements, in the absence of any evidence

MEMORANDUM OF DECISION - 6

demonstrating otherwise, Debtors have adequately shown that the $7,500 in the share account is all directly traceable to wages paid to Mr. Santillanes.

The Court respectfully disagrees with Trustee's suggestion that the share account has somehow over time been transmuted, or that Debtors have lost the ability to trace the money to wages, as was the case in *In re Virgin*, 04.2 I.B.C.R. 64 (Bankr. D. Idaho 2004). In *Virgin*, the Court distinguished *Colling* when the debtors claimed an exemption under Idaho Code § 11-207 not in a bank account, but in their state and federal income tax refunds, on the theory that the refunds were withheld from wages, and so could be claimed as exempt. The Court relied upon established case law discussing the nature of tax refunds as a return of tax previously paid to the government, a fact which significantly distinguished the nature of the debtors' property interest in the funds. The Court also noted that once paid over by the debtors to the government, the funds in *Virgin* were effectively commingled with other funds. As a result, the Court held that the tax refunds did not meet the statutory definition of disposable income and that the debtors could no longer trace the money to wages. *Virgin*, 04.2 I.B.C.R. at 65.

In contrast, there is persuasive authority suggesting that exempt funds deposited in a savings account retain their exempt character. In *Porter v. Aetna Cas. & Surety Co.*, 370 U.S. 159, 161 (1962) the Supreme Court considered

MEMORANDUM OF DECISION - 7

an exemption claimed in veteran's benefits under the Veterans' Administration Act that had been deposited in a federal savings and loan association account. The issue there was whether the money, having been deposited into a share account, had been converted to a "permanent investment," and thereby lost its exempt character as money. *Porter*, 370 U.S. at 160–61. The Court noted that for savings and loan associations, the "depositor is a shareholder rather than a creditor, and his deposits are subject to withdrawal only after a 30-day demand." *Id.* at 161. Despite the restriction upon withdrawal and the characterization of the money as shares, the Supreme Court upheld the district court's determination that the money in the account could be withdrawn in the same manner as money deposited in a checking account, and so retained its character as money. *Id.* at 161–62. The exemption was therefore allowed. *Id.* at 162.

Similar to a savings and loan account, an individual is a "member" of a federal credit union, and his or her deposits represent "shares" which evidence "money or its equivalent . . . ." Federal Credit Union Act, 12 U.S.C. § 1752(5). Absent Mr. Santillanes's agreement pledging his shares as additional collateral to secure the auto loans, he would be able to withdraw his "shares" in the same manner as money on deposit in either a savings or checking account. So despite pledging the shares as collateral, the amounts in the account have not lost their

MEMORANDUM OF DECISION - 8

essential character as "monies." Once the loans are paid in full, Mr. Santillanes can access the funds.[1]

Nor does the accumulation of the funds in the share account over seven years change the result in this case. Trustee points to the policy of the statute, arguing that it was designed to protect only current earnings and should not apply to protect earnings saved over time. However, the statute defines "earnings" as "compensation *paid* or payable," and includes within such definition "periodic payments pursuant to a pension or retirement program." Idaho Code § 11-206(1) (emphasis added). In other words, the statute protects all earnings "paid" without regard to *when* they were paid. Moreover, this definition of "earnings" includes pension and retirement money, which likely frequently includes funds withheld from pay and deposited in the pension plan over time. These definitions amount to a clear signal that wages, even when paid to the debtor, remain subject to exemption under the statute.

Finally, in *Hooper*, the Idaho Court of Appeals examined statements concerning the inmate's account detailing four months of deposits and withdrawals. The court expressed no concern that the wages in the account were

---

[1] While neither party raised the issue in this case, the Court notes that, in the context of veterans benefits in *Porter*, the accrual of interest on the savings deposits was held to have no impact on the availability of the exemption. *Porter*, 370 U.S. at 161.

MEMORANDUM OF DECISION - 9

not "current wages." While seven years is certainly longer than four months, such amounts to a distinction without a difference, especially considering there is no evidence the funds in the share account have ever been commingled with funds from other sources. If the Legislature desired to place a temporal limit on the exemption, it could have done so. It did not.

### Conclusion

The amounts in Debtors' Credit Union share account are all directly traceable to Mr. Santillanes' wages. Under Idaho Code § 11-207, the account funds constitute "earnings" and are exempt, subject to the limitations set forth in the statute. For these reasons, Trustee's objection to Debtors' claim of exemption will be denied by separate order.

Dated: November 20, 2005

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge